1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   LISA WRIGHT,                          )    NO. EDCV 08-666 AGR
12              Plaintiff,                  )
13         v.                              )
14                                          )    MEMORANDUM OPINION AND
     MICHAEL J. ASTRUE,                     )    ORDER
15   Commissioner of Social Security,       )
16              Defendant.                  )
17   _____)

18         Lisa Wright filed this action on May 22, 2008.  Pursuant to 28 U.S.C. §

19   636(c), the parties consented to proceed before Magistrate Judge Rosenberg on

20   June 18 and July 26, 2008.  (Dkt. Nos. 8, 9.)  On April 2, 2009, the parties filed a

21   Joint Stipulation ("J.S.") that addressed the disputed issues.  The Court has taken

22   the matter under submission without oral argument.

23         Having reviewed the entire file, the Court affirms the decision of the

24   Commissioner.

25   ///
26   ///
27   ///
28   ///

**I.**

## PROCEDURAL BACKGROUND

On March 22, 2005, Wright filed an application for disability insurance benefits, alleging a disability onset date of April 7, 2004.  A.R. 12.  The application was denied initially and upon reconsideration.  *Id.*  An Administrative Law Judge ("ALJ") conducted a hearing on February 4, 2008, at which Wright, two medical experts and a vocational expert testified.  A.R. 12, 590-616.  On February 29, 2008, the ALJ issued an unfavorable decision.  A.R. 9-23.  On April 21, 2008, the Appeals Council denied Wright's request for review.  A.R. 5-7.  This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

///

2

1
2

**III.**

**DISCUSSION**

3

### A.    Disability

4     A person qualifies as disabled and is eligible for benefits, "only if his

5 physical or mental impairment or impairments are of such severity that he is not

6 only unable to do his previous work but cannot, considering his age, education,

7 and work experience, engage in any other kind of substantial gainful work which

8 exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S.

9 Ct. 376, 157 L. Ed. 2d 333 (2003).

10

### B.    The ALJ's Findings

11     Wright meets the insured status requirements through June 30, 2010.

12 A.R. 14.  Wright "has the following severe combination of impairments: status

13 post right carpal tunnel release and ganglion cyst excision [ ], right knee synovitis

14 with patellofemoral malalignment [ ], disc protrusions at multiple levels of the

15 lumbosacral spine, with evidence of nerve root involvement [ ]."  A.R. 14-15

16 (citations to record omitted).

17     The ALJ found that Wright has the residual functional capacity ("RFC") to

18 lift and carry 25 pounds occasionally, 10 pounds frequently, standing and walking

19 for 4 hours in an 8-hour workday, sitting for 6 hours.  She may engage in

20 occasional postural activity, except she is precluded from climbing ropes, ladders

21 and scaffolds, or working at unprotected heights.  She is limited to occasional use

22 of foot pedals with the right lower extremity, and may engage in fine and gross

23 manipulation, as well as in reaching above shoulder level, frequently, but not

24 continuously.  She has no other significant limitations except that she should be

25 permitted to use a cane to walk long distances.  A.R. 16.

26     Wright cannot perform her past relevant work.  A.R. 21.  However, "there

27 are jobs that exist in significant numbers in the national economy that the

28

3

claimant can perform," such as jewelry preparer, optical lens inserter, and final assembler, optical goods.  A.R. 21-22.

### C.    Step Two of the Sequential Analysis

At Step Two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  To satisfy the duration requirement, the impairment must have lasted or be expected to last for a continuous period of not fewer than 12 months.  *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.  "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[1] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe

---

[1]    The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting."  *Yuckert*, 482 U.S. at 168 (internal quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step Two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and quotation marks omitted).  "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.  The ALJ is also "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Id.*  The Commissioner does not consider age, education, and work experience.  20 C.F.R. § 404.1520(c).

### D.   **Medical Opinions**

An opinion of a treating or examining physician is given more weight than the opinion of a non-treating physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and internal quotations omitted).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings.  *Id.*  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.*

A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a non-

1   examining physician's opinion cannot by itself constitute substantial evidence.

2   *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

3       "When there is conflicting medical evidence, the Secretary must

4   determine credibility and resolve the conflict."   *Thomas v. Barnhart,* 278 F.3d 947,

5   956-57 (9th Cir. 2002) (citation and quotation marks omitted).

6       **(1)   Dr. DeSilva's Opinion**

7       Wright contends that the ALJ failed to properly consider Dr. DeSilva's

8   psychological opinion that Wright suffers from bipolar disorder, depressed; pain

9   disorder associated with psychological factors and general medical condition; and

10  alcohol abuse (in remission as of November 2004).  J.S. at 3; A.R. 282, 296.

11      The ALJ acknowledged DeSilva's diagnosis.  A.R. 15.  However, "the

12  mere existence of an impairment is insufficient proof of a disability."   *Matthews v.*

13  *Shalala*, 10 F.3d 678, 680 (9th Cir 1993).  A claimant must show that she is

14  precluded from engaging in substantial gainful activity by reason of her

15  impairments.  *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).  Here, the ALJ concluded "that

16  the claimant has failed to establish the presence of a 'severe' psychiatric

17  impairment by reliable psychiatric evidence."  A.R. 16.

18      DeSilva prepared two evaluations, the first dated June 1, 2004 and the

19  second dated November 1, 2004.  A.R. 280-87, 294-301.  In both evaluations,

20  DeSilva diagnosed Wright with bipolar disorder, depressed (and aggravated in

21  the November 2004 evaluation); pain disorder associated with psychological

22  factors and general medical condition; and alcohol abuse (in remission in

23  November 2004).   A.R. 282, 296.  She administered a battery of psychological

24  tests, including the Minnesota Multiphasic Personality Inventory ("MMPI")-2, Milan

25  Clinical Multiaxial Inventory ("MCMI")-III, Bender Visual Motor Gestalt test,

26  House-Tree-Person, Rotter Incomplete Sentence Blank-Adult Form, Digit Span

27  subtest of the WAIS-III, Logical Memory subtest of the Wechsler Memory Scale-

28  Form 1, Beck Anxiety Inventory, Beck Depression Inventory-II and the Shipley

1

2

3

4

Institute of Living Scale for the June 2004 evaluation, A.R. 297; and the MMPI-2, MCMI-3, Beck Anxiety Inventory, and Beck Depression Inventory II for the November 2004 evaluation, A.R. 282.  For the November 2004 evaluation, she also reviewed treatment progress notes from her offices.  A.R. 284.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     The ALJ rejected DeSilva's opinion for two reasons.  First, the ALJ found no evidence that DeSilva had a treating relationship with Wright and, therefore, did not give her opinions the "weight generally afforded those of a treating medical or psychiatric source."  A.R. 15.  This finding is not supported by substantial evidence.  DeSilva saw Wright at least twice in a five month period.  A.R. 294-301 (June 1, 2004), 280-87 (November 1, 2004).  DeSilva stated that Wright's primary physician, Dr. Doty, referred Wright "to our office for consultation and treatment" on April 27, 2004.  A.R. 299, 452.  In November 2004, DeSilva noted that Wright "has been coming to our outpatient clinic for the treatment of her Bipolar Disorder, depressed.  And Pain Disorder associated with both psychological factors and a general medical condition."  A.R. 281.  DeSilva reviewed the treatment progress notes "from our offices."  A.R. 284.  Although the treatment notes are not in the record and there is no mention of who treated Wright in the outpatient clinic, DeSilva refers to herself as a "treating physician" in the November 2004 report.  A.R. 280.  On this record, the ALJ's finding that there is no treating relationship is not supported by substantial evidence.[2]  *See Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (physician who examined patient once may complete Mental RFC Assessment on behalf of treatment team); *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir.1994) (physician who saw claimant twice within 14-month period, prescribed medication and referred to him as "my patient" was treating physician); 20 C.F.R. § 404.1502.  Nevertheless,

26

27

28

    [2]   The result is the same whether Dr. DeSilva is considered a treating or examining physician, since in either case, the Commissioner can only reject the physician's opinion for "specific and legitimate reasons that are supported by substantial evidence in the record."   *Widmark*, 454 F.3d at 1066.

1   the ALJ may consider the shortness of DeSilva's treating relationship in

2   assessing her opinion.  *See Benton*, 331 F.3d at 1038-39.

3          Second, the ALJ noted that the examining physician, Dr. Rubenstein, the

4   medical expert, Dr. Griffin, and the state agency consultant found that any mental

5   impairment was not severe.  A.R. 15-16, 345.  By contrast, despite indications

6   that Wright is magnifying or exaggerating symptoms in testing, DeSilva "provides

7   no explanation for why the claimant's allegations and presentation should,

8   nevertheless, be considered reliable a

9          nd/or why her opinions and conclusions remain valid."  A.R. 16.  This

10  reason is supported by substantial evidence.

11         The examining physician, Dr. Rubenstein, examined Wright on September

12  16, 2004.  A.R. 310.  Rubenstein diagnosed depressive disorder NOS and

13  personality disorder NOS.  A.R. 323.  Wright tested as exaggerating symptoms,

14  which indicated that she was likely to be exaggerating in other contexts including

15  the evaluation interview.[3]  A.R. 326.

16         Based upon his evaluation, which included an extensive analysis of

17  Wright's work history, Rubenstein concluded "that from the standpoint of

18  psychological distress including anxiety and depression, Ms. Wright is able to

19  function without handicap and without psychological hindrance."  A.R. 327.

20  Rubenstein found an "absence of psychologically based work limitation with

21  regard to her ability to cope with tasks that are varied and complex.  From a

22  cognitive perspective, Ms. Wright does not have a work handicap."  A.R. 328.

23  However, Rubenstein did find some "long-term and continuing psychologically

24

25         _____

26         [3]   The Court notes, as did the ALJ, that the medical expert testified that
    Wright had undergone testing by separate examiners and, on each occasion, the
    test results were invalid based on elevated scores indicating exaggeration.  A.R.
27  609-10.  Given the consistently invalid test results, the medical expert testified
    that "I don't have a medical basis for concluding that she has a disorder."  A.R.
28  610.

based work limitation from the standpoint of Personality Disorder."[4]  A.R. 332.

Rubenstein found no limitation on Wright's ability to comprehend and follow instructions, perform simple and repetitive tasks, maintain a work pace appropriate to a given workload, perform complex tasks, make decisions without immediate supervision, and accept and carry out responsibility.  A.R. 333-37.  Using the Raven Standard Progressive Matrices, which tests sustained focus and concentration in a contest of higher levels of thinking, Wright scored above average.  A.R. 332.  Rubenstein also noted Wright's ability to perform activities of daily living such as shopping, cooking, driving, cleaning, traveling, and occasional bicycle riding.  A.R. 334.  However, Rubenstein found minimal to slight limitation in Wright's ability to relate to other people beyond giving and receiving instructions, and ability to influence people.  A.R. 336.  "Wright has demonstrated repeated maladaptive behavioral patterns interfering with her ability to effectively relate to, communicate with, and influence others at work."  A.R. 332.  Rubenstein found that, from a psychological perspective, Wright could return to her usual and customary work.[5]  A.R. 332.

Rubenstein's opinion supports a finding that Wright's mental impairment is not severe.[6]  *See* 20 C.F.R. § 404.1520a(d)(1).  As an examining physician's opinion based on independent clinical findings, Rubenstein's opinion constitutes substantial evidence.  *Orn*, 495 F.3d at 632.

As discussed above, the ALJ discounted DeSilva's opinion because her

---

[4]  Wright told Rubenstein that, in the past, she had repeated suicide attempts and hospitalizations.  More recently, she had a hallucination.  A.R. 330.  Wright told DeSilva that she was hospitalized three times with suicidal ideation.  A.R. 295.  The record does not contain medical records of any psychiatric hospitalization.

[5]  The ALJ noted that, at the hearing, Wright testified she was employed part-time caring for special needs children.  A.R. 21, 594-96.

[6]  The state agency physician similarly found that Wright did not have a severe impairment.  A.R. 345.

testing also indicated Wright was exaggerating symptoms, yet DeSilva did not explain why her conclusions were nevertheless valid.  A.R. 16.  In June 2004, DeSilva stated she considered it important to conduct psychological tests "[d]ue to the extent of the subject's reported level of distress and to gather further information about the current level of functioning."  A.R. 297.  On the MMPI-2, DeSilva noted a significantly elevated Fb scale and stated that the content scales in the latter half of the test are not considered valid for clinical use.  *Id.*  "There may be some over reporting of symptomotology (sic) but the results are considered clinically useful."  *Id.*  On the MCMI-III, the results indicated "a broad tendency to magnify the level of experienced illness or a characterological inclination to complain of be self-pitying."  A.R. 298.  "Caution in interpretation is advised."  *Id.*  The June 2004 report does not explain DeSilva's consideration of Wright's  exaggeration.

In November 2004, on the MMPI-2, DeSilva reports that "[t]he profile needs to be interpreted cautiously due to some elevation of the F scale."  A.R. 283.  However, DeSilva stated that Wright's "profile is valid and interpretable."  *Id.*  On the MCMI-3, DeSilva reported that "[t]he patient's response style may indicate a broad tendency to magnify the level of experienced illness or a characterlogical (sic) inclination to complain or be self-pitying.  On the other hand, the responses may convey feelings of extreme vulnerability.  The interpretation is undertaken cautiously."  *Id.*

The ALJ is correct that DeSilva does not explain her consideration and interpretation of Wright's tendency to exaggerate.  "The [ALJ] is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to [her] subjective judgments."  *Lester*, 81 F.3d at 832-33.  The ALJ could, however, discount DeSilva's opinion based on her failure to explain her conclusions in light of the indications of exaggeration as compared to the more complete and reasoned report from Rubenstein.

1
2
3
4
5
6

The ALJ concluded that "repeatedly demonstrating exaggeration on multiple, but different, personality inventories leads to only one reasonable conclusion, that the claimant's psychiatric allegations cannot be relied upon." A.R. 15.  The ALJ also found that Wright's "[i]nconsistent statements and actions also undermine her general credibility," both in the psychological and physical contexts.  A.R. 20.

7
8
9
10
11
12
13
14
15
16
17
18

The ALJ's findings are supported by substantial evidence.  A.R. 16. Indeed, the differing assessments of Rubenstein and DeSilva may result from the different allegations made by Wright to each physician.  For example, whereas DeSilva reports Wright as saying she was terminated twice from group home jobs and was told she was not doing her duties up to the required standards (A.R. 295), Rubenstein reports Wright as saying she quit her first group home job because she was not making enough money, she found another group home job that gave her supervisorial duties and more money, and was wrongfully terminated from that second job after two years because she reported an incident to a licensing board.  A.R. 312, 317-18, 324.  As the ALJ noted, Wright's primary physician, Dr. Doty, states in 2004 that Wright "is being taken off work at this time" due to knee problems.[7]  A.R. 18, 445.

19
20
21
22
23
24
25
26

As another example, whereas DeSilva reports Wright as saying that she does not go to any outing, movies, or sporting events, and does not see any friends (A.R. 282, 297), Rubenstein reports Wright as saying that she has above average intelligence, is learning computers, and likes to cook, sew, paint and work with furniture.  A.R. 314-15.  Wright went to three jazz festivals in 2004 with family, sees her family on holidays and for parties, flew to Las Vegas with a friend the month before her evaluation, went to New York with the same friend a year earlier, and attends social events.  A.R. 315-16.

27
28

[7]  Wright told Dr. Jackson, an orthopedic surgeon, that she went off work in May 2004 due to problems with her right knee.  A.R. 227.

1

**(2)  Dr. DeEspinosa's Opinion**

2       Wright also contends that the ALJ did not give appropriate consideration

3   to the opinion of Dr. DeEspinosa.  DeEspinosa appears only once in the record,

4   having prepared a two-page "Work Capacity Evaluation (Mental)" checklist dated

5   July 5, 2006.  A.R. 497-98.  There is no indication in the record of DeEspinosa's

6   professional relationship to Wright.  As the ALJ noted, Dr. Soor-Melka, not

7   DeEspinosa, appeared to be Wright's treating physician at the time.  A.R. 15.

8       The checklist consists of 19 line items representing various personal

9   abilities, most with boxes to be marked in a range from "None" to "Extreme" or

10  "Unknown."  Dr. DeEspinosa checked the "Moderate," "Marked," or "Extreme"

11  boxes, indicating limited ability to carry out each line item's function.  However,

12  there is no narrative supporting any of the choices and no citation to any type of

13  examination or objective clinical study.  As the ALJ noted, "In addition, [Dr.

14  DeEspinosa] provides no explanation regarding how her conclusions were

15  reached.  She merely checked boxes on a checkbox form."  A.R. 15.  The form is

16  wholly conclusory.  Even a treating physician's conclusory, check-the-box opinion

17  may be properly discounted.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

18  1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory

19  check-list report); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may

20  reject check-off reports that did not contain explanations for conclusions).  The

21  ALJ's reasons for discounting DeEspinosa's opinion are supported by substantial

22  evidence.

23          **E.   Development of the Record**

24      Wright contends that if the ALJ found DeEspinosa's check-the-box form

25  conclusory, the ALJ had a duty to develop the record further.

26       It is the claimant's duty to prove he is disabled.  *Mayes v. Massanari*,

27  276 F.3d 453, 459 (9th Cir. 2001).  *See* 42 U.S.C. § 423(d)(5)(A) (the claimant

28  must furnish medical and other evidence of her disability); 20 C.F.R. §

12

1  404.1512(c) ("You must provide medical evidence showing that you have

2  impairment(s) and how severe it is during the time you say you are disabled.").

3      "The ALJ . . . has an independent duty to fully and fairly develop the record

4  and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*,

5  242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks

6  omitted).  "An ALJ's duty to develop the record further is triggered only when

7  there is ambiguous evidence or when the record is inadequate to allow for proper

8  evaluation of the evidence." *Mayes*, 276 F.3d  at 459-60.

9      Here, the record contains Wright's psychological treatment records.  None

10  bear the name of DeEspinosa.  The ALJ found that DeEspinosa's report was

11  conclusory and unsupported, not ambiguous or inadequate to allow for a proper

12  evaluation.  Nor did any physician render an opinion that the record was

13  ambiguous or inadequate. *Cf. Tonapetyan*, 242 F.3d at 1150 (duty to develop

14  record existed when ALJ relied on physician who expressed that more medical

15  evidence was needed to state a diagnostic opinion).  Based on the record, the

16  ALJ had no duty to develop the record further. *See Mayes*, 276 F.3d at 459-60.

17      **F.    Plaintiff's Remaining Issues**

18      Wright also contends that the ALJ (1) improperly determined her residual

19  functional capacity; and (2) posed an incomplete hypothetical question to the

20  vocational expert.  Each issue relates exclusively to the ALJ's rejection of the

21  opinions of DeSilva and DeEspinosa.  J.S. 19-20.  In light of the Court's finding

22  that the ALJ's rejection of the two opinions was supported by substantial

23  evidence, the ALJ did not err in his residual functional capacity determination or

24  in posing a hypothetical to the vocational expert.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 31, 2009

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

14